IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| LEDARIAN PICKRON, #27409-078 | § | |
| VS. | § | CIVIL ACTION NO. 6:19cv267 |
| | | CRIM NO. 6:17cr00074 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Movant Ledarian Dearsey Dentrell Pickron, a federal prisoner, brings this motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255, (Dkt. #4). The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for disposition of the case. For reasons explained below, the Court recommends that Movant's section 2255 motion be denied and this case be dismissed, with prejudice.

**I. Procedural History and Factual Background**

On May 1, 2018, after entering a guilty plea, Pickron was sentenced to seventy-four months' imprisonment for one count of possession with the intent to distribute less than 28 grams of cocaine base (Count Three of the indictment) in violation 21 U.S.C. § 841(a)(1). The Court entered judgment on May 9, 2018. *See* Dkt. #80, 6:17cr074 (criminal case). Pickron did not file a direct appeal and filed this proceeding in June 2019.

**II. Pickron's Section 2255 Motion**

Pickron presents several claims. Specifically, he maintains that his attorney failed to file "any motion pertaining to [his] case" and failed to file a direct appeal as requested. Pickron states that he told his attorney "to file for my appeal when we were in court." He further argues that his attorney misled him on his indictment charges:

1

> I was told I was pleading to count 3 and all additional charges would be dismissed it said nothing about (relevant conduct) and nothing about [using] it to affect or change my sentence of my guilty plea. And its also unconstitutional.

Dkt. # 9, pg. 5 (amended section 2255 motion). Pickron further claims that he should have received a downward departure for his cooperation.

## III. The Government's Response and Pickron's Memorandum in Support

After the undersigned issued an order for an answer, the Government filed a response addressing Pickron's section 2255 proceeding. The Government maintains that Pickron's claim that his attorney failed to file a notice of appeal when requested requires an evidentiary hearing. As to all the other claims, the Government argues that they are without merit and/or barred by the plea waiver.

While Pickron did not file a reply addressing Respondent's response, he filed a memorandum, (Dkt. #24). He argues that the Government "conspired to give [him] multiple counts on [his] indictment" and insists that he was wrongfully convicted "of those two charges with the help of (relevant conduct)." Pickron further complains about the sentence of his co-defendant.

## IV. Pickron's Plea and Sentencing Hearings

### A. Plea Hearing

On February 6, 2018, the undersigned presided over Pickron's plea hearing after obtaining consent. Mr. Bobby Mims was present representing Pickron and Mr. Chris Botto representing the Government. *See* Dkt. #93, 617cr074 (criminal case). For purposes of this proceeding, the relevant portions of the plea hearing reads as follows:

| | |
|---|---|
| The Court: | Mr. Pickron, I am just going to get some background information from you now to establish on the record that you are competent to go forward with our change of plea hearing today. Tell me your full name. |
| Mr. Pickron: | Ledarian Dearsay Dentrell Pickron. |

2

. . . .

| | |
|---|---|
| The Court: | Are you experiencing any physical trouble today? |
| Mr. Pickron: | No, your Honor. |
| The Court: | I see that you have your face kind of bandaged there. You had some kind of dental work done yesterday; is that correct? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | Are you feeling physically okay to go through with our plea hearing today? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | All right. Have you ever been treated for any mental illness? |
| Mr. Pickron: | No, your Honor. |
| The Court: | Are you currently under the influence of any drugs, alcohol, or medicine of any kind? |
| Mr. Pickron: | Pain medication, but it is not bothering me. I can understand. |
| The Court: | Okay. How recently have you had your pain medication? |
| Mr. Pickron: | About 11:00 o'clock. |
| The Court: | Okay. All right. Do you feel like you have understood what has gone on in your case up to this point? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | And you also feel like you understand what you are doing here today? |
| Mr. Pickron: | Yes, your Honor. |

(Dkt. #93, pg. 4-5) (plea transcript, 6:17cr74). The Court then asked Mr. Mims, defense counsel, if he believed that Pickron possessed the requisite mental and intellectual capacity to understand the proceedings and to enter into a knowing and voluntary guilty plea—to which Mr. Mims

responded in the affirmative, in part, by noting that "I realize that he has had some medication, but he seems competent." *Id*. at pg. 5-6.

Pickron then testified that he was satisfied with Mr. Mims's representation, that Mr. Mims answered all of his questions, that Mr. Mims went over the indictment and the facts of the case with him, and that he intended to enter a guilty plea *Id*. at pg. 6. At this point, the Court explained that the charge Pickron was pleading guilty to was Count Three of the Indictment—possession with intent to distribute cocaine base, also known as crack cocaine—to which Pickron responded that he understood the charge against him. The Court then explained the range of punishment for the offense—which includes a prison sentence for a period of not more than twenty years, a term of supervised release of at least three years, and a fine not to exceed one million dollars. Mr. Pickron stated that he understood the range of punishment. *Id*. at pg. 7.

The Government then summarized the entire plea agreement. The Court then proceeded to question Pickron about the plea agreement:

| | |
|---|---|
| The Court: | Mr. Pickron, are those the terms of your Plea Agreement with the Government as you understand them? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | Do you feel like you fully understand the agreement? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | Has anyone made any promises to you, and by that I mean any promises that are not part of this Plea Agreement in exchange for your guilty plea? |
| Mr. Pickron: | No, your Honor. |
| The Court: | Has anyone attempted to force you to plead guilty? |
| Mr. Pickron: | No, your Honor. |
| The Court: | Are you pleading guilty because you are, in fact, guilty? |

       Mr. Pickron:   Yes, your Honor.

Dkt. #93, 6:167cr074, pg. 11. The Court then asked Mr. Mims whether he fully and completely

discussed each term of the plea agreement with Pickron, to which Mr. Mims responded that he had

done so, "at least twice." *Id*. at pg. 12. Mr. Mims also explained that he discussed the sealed plea

addendum with Pickron as well. Ultimately, Pickron entered a guilty plea and the Court determined

that he was competent and capable of making an informed plea—and entered a knowing and

voluntary guilty plea supported by an independent basis of fact containing each of the essential

elements of the offense. *Id*. at pg. 20.

       2. Sentencing Hearing

       Pickron proceeded to his sentencing hearing before United States District Judge Ron Clark

on May 1, 2018. The transcript reflects that Pickron, Mr. Mims, and Mr. Botto were present for

the hearing. While the entire sentencing hearing is sealed, relevant portions to this case—that do

not require seal—read as follows:

| | |
|---|---|
| The Court: | All right. Mr. Mims, have you read the Revised Presentence Investigation Report and discussed it with your client? |
| Mr. Mims: | We have, your Honor. |
| The Court: | Do you believe he understands it? |
| Mr. Mims: | I believe he understands it. |
| The Court: | Mr. Pickron, would you please stand, sir? Sir, have you read the revised Presentence Investigation Report and discussed it with your lawyer? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | Do you believe you understand the report? |
| Mr. Pickron: | It took me a while to understand it. |
| The Court: | It was pretty long. |

| | |
|---|---|
| Mr. Pickron: | Yes, sir. |
| The Court: | Okay. But have you had a chance to look it over; do you think you understand it now? |
| Mr. Pickron: | Yeah, I got a good feel of it— |
| The Court: | Okay |
| Mr. Pickron: | —good feel. |

. . . .

| | |
|---|---|
| The Court: | Now, I believe there is no objections from the Government; is that correct? |
| Mr. Botto: | No objections, your Honor. |
| The Court: | And I believe there is none from the Defendant; is that correct? |
| Mr. Mims: | No objections, your Honor, there is not any objections. There was a question that Mr. Pickron had about paragraphs—I believe it was a couple paragraphs on criminal history points. We have addressed that, and there is no legitimate objection to Paragraphs 33 and 34. |
| | There was an indication there might be some criminal history points early on that should not have been assigned, but it turns out that those are properly assigned points. It has to do with not being sentenced in the same proceeding and under the same charging instruments. |
| | We don't have any objections. I am just bringing that to the Court's attention because Mr. Pickron brought it to mine. |

Dkt. #92, pg. 2-4, 6:17cr0074 (sealed). After turning to the applicable sentencing guidelines, the range of punishment, and a possible downward departure, the Court ultimately sentenced Pickron to seventy-four months' imprisonment, which was a downward variance. The Court then proceeded to address any potential direct appeal, which reads in pertinent part as follows:

| | |
|---|---|
| The Court: | What you need to know is that in almost any case if you are thinking of filing an appeal, you need to give notice within 14 days of me signing the judgment. Do you understand that, sir? |
| Mr. Pickron: | What— |

The Court:    If you want to file an appeal, in almost every case, you would have to give notice of appeal within 14 days of me signing off on the judgment. In other words, there is a time limit here. Do you understand that?

Mr. Pickron:  Yes, your Honor.

The Court:    If you have got a question, you need to ask your attorney about that.

*Id.* at pg. 28 (sealed).

## V. Evidentiary Hearing Under *Tapp*

In his section 2255 motion, Pickron maintains that counsel, Mr. Mims, failed to file a notice of appeal despite being requested to do so. The undersigned ordered an evidentiary hearing, and attorney Charles Van Cleef was appointed to represent Pickron on this sole *Tapp* issue, (Dkt. #27). *See United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). The evidentiary hearing was conducted on this sole issue before the undersigned on November 30, 2021. The pertinent parts are outlined and summarized below.

### A. Pickron's Testimony

When asked whether he told Mr. Mims that he wanted to file an appeal, Pickron responded "yes." Pickron testified that he told Mr. Mims to file an appeal "right after" court. Specifically, he testified that he told Mr. Mims that he sought to appeal right after sentencing while still at the courthouse. Pickron further testified that he "did everything he could" by writing Mr. Mims and having his family members make calls. In a letter written to Mr. Mims on May 3, 2018 or May 4, 2018, Pickron wrote to Mr. Mims not to "forget" to file the direct appeal.

Pickron next testified that he was unhappy with his Presentence Investigation Report and that Mr. Mims "coerced" him into signing away his rights—as his case has nothing to do with "relevant conduct." When asked if he indicated his unhappiness, Pickron testified that he expressed his unhappiness right before seeing the judge and that he wanted a new attorney—but was told it

was too late. Moreover, when asked about what occurred after sentencing, Pickron testified that he told Judge Clark that he wanted to appeal, at which point Mr. Mims remarked that he would "do it"—all of which occurred during the sentencing proceedings.

On cross-examination, Pickron testified that he told Judge Clark, on the record, that he desired to appeal and that he told Mr. Mims after sentencing. He stated that Mr. Mims "leaned over" and told him he would appeal it.

Mr. Lockner, Assistant United States Attorney, subsequently asked Mr. Pickron whether he told Judge Clark, during sentencing proceedings, that he wanted to appeal, Mr. Pickron responded in the affirmative, testifying that he remarked, "I would like to appeal it" or something to that effect. Mr. Lockner then stated that the sentencing transcript shows that he never asked and then asked Pickron whether his memory has failed him. Pickron testified that "no, [he] didn't think" his memory failed him—and repeated that he remarked, during the sentencing hearing, "yes, your Honor, I would like to appeal," and that Judge Clark responded with, "get with your lawyer then." Pickron further testified that as he and Mr. Mims were walking out of the courtroom, Mr. Mims said he "would take care of it" and explained that it was a "slow process."

Pickron testified that he then followed up with the written letter. Mr. Lockner then asked Pickron whether he believed that Mr. Mims forgot what Pickron had asked him to do within the short period of time between the sentencing on May 1, 2018, and the date of the letter to Mr. Mims sent on May 3 or 4, 2018 such that he had to remind him; Pickron responded that he "didn't think he'd remember" and that counsel is supposed to follow his best interests. Mr. Lockner then asked whether it was necessary for him to have his family members call Mr. Mims, to which Pickron responded in the affirmative and that he "couldn't take him at his word."

Mr. Lockner then reminded Pickron that he has been under oath at least three times in this case. During his first two hearings, Mr. Lockner stated, Pickron told both Judges that he knew was he was doing, but during this third time under oath, this is the first time mentioning this. Pickron responded by explaining that he had dental work the day before his plea hearing and that he was on medication.

B. Mr. Mims's Testimony

Mr. Lockner then called Mr. Mims to the stand. Mr. Lockner explained that Pickron stated that multiple conversations occurred during sentencing and asked whether Pickron told him whether he wanted to file a notice of appeal, to which Mr. Mims testified that at no time, neither before nor after sentencing, did Mr. Pickron ask him to file a notice of appeal. Mr. Mims testified that had Pickron done so, he would have obliged and would have put it on his billing records for CJRA (Criminal Justice Reform Act) purposes.

Mr. Mims further testified that he has no recollection of Pickron expressing dissatisfaction with his Presentence Investigative Report. Pickron received a 22-month downward departure from the recommended sentence, Mr. Mims testified, so it would not have made sense to appeal—adding that it would have been malpractice for him to do so because it would have opened the door to a "bigger" sentence than what he received. Mr. Mims testified, however, that he would still have filed the notice of appeal had he been asked—but stated that because filing a notice of appeal would have been "nonsensical," if Pickron had asked him to do so, it would have stuck out in his mind and he would remember. When asked about the time period after sentencing, Mr. Mims testified that "weeks later" a woman called his office and spoke with him, but there was no mention of a notice of appeal. Mr. Mims explained that no one indicated to him that Pickron wanted to file a notice of appeal.

9

**VI. Mr. Mim's Affidavit**

After the evidentiary hearing, Mr. Mims filed an affidavit supplementing his testimony addressing Pickron's claims and stating that he does not change any factual statements he made at the hearing. In addressing Pickron's claims and testimony, Mr. Mims states, in relevant part, as follows:

1.    Pickron testified that I met with him to review his Presentence Investigative Report (PSR) only one day before he was sentenced. He was sentenced on May 1, 2018. Also, Pickron has falsely alleged this in previous filings in this action. This allegation is patently false as the docket in the criminal case indicates that the Initial Disclosure of the PSR was issued on March 22, 2018. My recollection is, and my billing records show, that I traveled to the Titus County Jail in Mt. Pleasant, Texas, to meet with Pickron on April 1, 2018. Additionally the Titus County Jail should have records verifying my visit on April 1, 2018. This PSR review meeting took place at least 30-days before the sentencing hearing. Moreover, after reviewing the PSR together, we agreed that there were no legal objections to be made to the PSR. Pickron voiced no objections and agreed that we would seek a variance based upon his January 2018 cooperation with the Gregg County authorities.

Pickron testified falsely that I met with him on the PSR only one day before the sentencing hearing and that he told me that he "did not like" the PSR.

. . . .

3.    On May 1, 2018, Judge Ron Clark, without a 5K.1 motion from the Government, granted Pickron a sentencing variance of 22-months. This variance reduced the recommended sentence from 96-months to 74 months. The Court has the transcript from the sentencing hearing on May 1, 2018, which transcribed the plea colloquy, the argument of counsel, and the response from the Government.

Pickron received effective representation by the Court impos[ing] a significantly reduced sentence (22-months) because of the defense counsel's representation.

4.    On November 30, 2021, Pickron testified that he requested I file a Notice of Appeal. I have previously testified that he never asked for an appeal. A review of my Pickron file, notes, letters, phone records, and billing records (Exhibit A) reveals nothing about Pickron requesting an appeal. Indeed, if Pickron had requested I file a Notice of Appeal, I would have done so, filed a motion to withdraw, asked the Court to appoint another lawyer to handle the appeal, and filed the work on my CRJA 20 voucher. My law firm's internal audit system requires me to account for all billable time, as does the Criminal Justice Act. Had Pickron requested an appeal, I would have filed and billed the time and expense on the CJA-20 voucher. None of this exists on Exhibit A, and therefore, is fiction on the part of Pickron.

Pickron falsely testified that he requested an appeal from counsel.

5. Further, on November 30, 2021, Pickron testified that I coerced him into signing a plea agreement. He states this as a conclusion but does not explain how I coerced him into signing any document. I do not know how a defense attorney can coerce a defendant into signing anything. Pickron confuses the advice of counsel about making the best choice of bad options with coercion. If Pickron was coerced, it was by the Government, but it was legal coercion. If he did not sign the plea agreement and went to trial, he would have been convicted and suffered much more than the 74-months that he received.

Pickron testified falsely that he was coerced to sign the Plea Agreement and did not raise this as an issue at his plea colloquy on May 1, 2018.

(Dkt. #32, sealed).

## VII. Legal Standards

### A. *Federal Habeas Corpus Proceedings*

Section 2255 is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). Section 2255 "provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is subject to collateral attack." *U.S. v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1999) (citing *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994)).

In other words, cognizable claims within a section 2255 motion are narrow; the movant may not present a generalized, broad attack challenging the legality of his or her conviction and, importantly, non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in section 2255 proceedings—absent a showing of cause for the procedural default and actual prejudice ensuing from the error. *United States v. Shaid*, 936 F.2d 228, 232 (5th

Cir. 1991); *see also Villasenor-Cruz v. United States*, 2017 WL 6627045 (E.D. Tex.—Sherman, Oct. 3, 2017) (same).

### B. Guilty Pleas

Because Movant pleaded guilty, the starting point in analyzing his claims begins with his plea. The plea agreement, which Movant signed, contained the following provision:

> Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory minimum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

*See* 618cr014, Docket No. 23, pg. 6-7 (sealed plea agreement).

The Fifth Circuit has held that an ineffective assistance claim will survive an appeal waiver where the alleged ineffectiveness directly affects the validity of the waiver or of the plea itself. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("We also note that a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel.").

A guilty plea will be upheld on habeas review if the plea was entered into knowingly, voluntarily, and intelligently. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). Whether a plea is knowing turns on whether the defendant understood the consequences of his plea; the defendant must have a full understanding of "what the plea connotes and of its consequences." *Id.* at 255. A defendant need only understand the direct consequences of the plea, and need not be made aware of every consequence that—absent the guilty plea—would not otherwise occur. *Id.* The consequences of a guilty plea, with respect to sentencing, means that the

defendant must know the maximum prison term and the fine for the charged offense. *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).

With respect to voluntariness, the question becomes whether the plea was induced by threats or improper promises. *Id.*; *see also U.S. v. Nunez*, 539 F. App'x 502, 503 (5th Cir. 2013) ("Whether a plea is knowing looks to whether the defendant understands the direct consequences of his plea, while voluntariness looks to, inter alia, whether the plea was induced by threats or improper promises.").

Firm declarations in open court—including a plea colloquy—carry a strong presumption of verity. *See United States v. Perez*, 690 F. App'x 191, 192 (5th Cir. 2017) (Mem.) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the movant faces the heavy burden of proving that he is entitled to relief through overcoming the evidence of his own words. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to an evidentiary hearing on a claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third witness.").

### C. Ineffective Assistance of Counsel and Guilty Pleas

A defendant asserting that counsel was ineffective must demonstrate both deficient performance and ensuing prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984). Conclusory allegations of ineffective assistance of counsel will not suffice. *See Miller v. Johnson*, 200 F.3d

274, 282 (5th Cir. 2000) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel."); *see also U.S. v. Demik*, 489 F.3d 644, 647 (5th Cir. 2007) (explaining that "generalized assertions about counsel's failure to file motions, to make objections, and to follow Demik's instructions" are not enough.).

Furthermore, in evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016). To establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's alleged deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 773 (5th Cir. 2014). A "reasonable probability" is one that is sufficient to undermine the confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694.

In the context of a plea, a defendant must illustrate that, but for counsel's alleged deficient performance, he or she would have proceeded to a trial. *See U.S. v. Rodriguez*, 616 F. App'x 153, 154 (Mem.) (5th Cir. 2016) ("As found by the district court, however, Rodriguez failed to show that, but for counsel's alleged deficient performance, she would have proceeded to trial.") (citing *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) ("In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.")).

## VIII. Discussion and Analysis

As mentioned, Pickron claims that his trial counsel, Mr. Mims, was ineffective for failing to file a notice of appeal as requested in court. He further maintains that counsel was ineffective for failing to inform him or misleading him with respect to his "relevant conduct" and that counsel

14

coerced him into signing his plea agreement. Finally, Pickron insists that he should have received a "time cut" due to his cooperation with authorities.

### 1. Pickron's Plea Agreement & "Relevant Conduct"

Pickron's claims concerning his plea agreement and "relevant conduct" are without merit. Further, to the extent Pickron maintains that counsel was ineffective because he entered a plea that was not knowing or voluntary is without merit. As mentioned, Pickron contends that counsel failed to explain that his "relevant conduct" would affect his sentence or his plea agreement and that counsel "coerced" him. Each of these claims is refuted by the record and otherwise without merit.

The Court understands Pickron's claim is that counsel was allegedly ineffective for failing to explain that his "relevant conduct" would affect his sentence or his plea agreement—thereby showing that his plea was involuntary and unknowing. The Presentence Investigation Report denotes the following concerning Pickron's offense level computation on Count Three:

> With respect to the count of conviction, the defendant is responsible for distributing 18.4 grams of cocaine base. Beyond the count of conviction, the Government's investigation has revealed that the defendant distributed an additional 134 grams of cocaine base. USSG § 1B1.3(a)(2) directs that [] solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, the defendant's base offense level shall be determined on the basis of all facts and omissions described in § 1B1.3(a)(1)(A)&(B), that were part of the same course of conduct or common scheme or plan as the offense of the conviction (relevant conduct). The additional 134 grams of cocaine base has been determined to be "relevant conduct" and shall be used in determining the defendant's total drug accountability. The defendant's base offense level shall be determined using a total of 152.4 grams of cocaine base.

(Dkt. #68, pg. 5) (Presentence Investigation Report, 6:17cr0074) (sealed). The Report further denotes that "[p]ursuant to USSG §2D1.1(a)(5)&(c)(7), if the offense involved more than 112 grams but less than 196 grams of cocaine base, the base offense level is 26. *Id.* at pg. 6. Accordingly, Pickron's Presentence Investigation Report shows that he was assessed a base offense level of 26, which included his "relevant conduct." *Id.*

Pickron, however, cannot now hide behind his sworn words articulated at his sentencing hearing before District Judge Ron Clark. Pickron testified, under oath during his sentencing hearing that he both understood his Presentence Investigation Report and that he discussed the Report with Mr. Mims prior to sentencing. In pertinent part, the hearing reads as follows:

| | |
|---|---|
| The Court: | All right. Mr. Mims, have you read the Revised Presentence Investigation Report and discussed it with your lawyer? |
| Mr. Mims: | We have, your Honor. |
| The Court: | Do you believe he understands it? |
| Mr. Mims: | I believe he understands it. |
| The Court: | Mr. Pickron, would you please stand, sir. Sir, have you read the revised Presentence Investigation Report and discussed it with your lawyer? |
| Mr. Pickron: | Yes, your Honor. |
| The Court: | Do you believe you understand the Report? |
| Mr. Pickron: | It took me awhile to understand it. |
| The Court: | It was pretty long. |
| Mr. Pickron: | Yes, sir. |
| The Court: | Okay. But have you had the chance to look it over; do you think you understand it now? |
| Mr. Pickron: | Yeah, I got a good feel of it. |
| The Court: | Okay. |
| Mr. Pickron: | —good feel. |

(Dkt. #92, pg. 2-3, 617cr07) (sealed sentencing hearing). At this point, Judge Clark asked both parties whether there were any objections to the Report, and both sides confirmed that there were no objections. The sentencing transcript illustrates, therefore, that Pickron stated, under oath, that

16

he read the Report—which included the sections regarding "relevant conduct"—discussed it with Mr. Mims, and that the defense had no objections.

Furthermore, Mr. Mims—through his affidavit—contradicts Pickron's claims. Mr. Mims argues that Pickron testified falsely that he met with him about the PSR only one day before sentencing and that Pickron told him that he "did not like the PSR," as Mr. Mims's records show that he met with Pickron at the Jail on April 1, 2018, to review the PSR. During that meeting, Mr. Mims and Pickron agreed that there were no objections and that they would seek a variance based on his cooperation. Mr. Mims business records denote his meeting on April 1, 2018, to review the PSR, (Dkt. #32-1, pg. 10) (sealed).

The docket reflects that Pickron testified that he reviewed the Presentence Investigation Report that denoted his relevant conduct and how such relevant conduct resulted in a Base Offense Level of 26. He testified that he understood the Report and that there were no objections. Pickron has made no effort to overcome the strong presumption of truth afforded by his sworn words before Judge Clark. In this way, he cannot show that counsel was ineffective and Pickron's claim concerning his plea/sentencing and "relevant" conduct should be dismissed.

Pickron maintains that his guilty plea "was unconstitutional." A review of the plea hearing, however, illustrates that Pickron entered his guilty plea knowingly, voluntarily, and intelligently. The plea transcript shows that Pickron was advised of and understood the range of punishment for his offense and that he testified that he fully understood his plea agreement, (Dkt. #93, pg. 7-11). When asked if anyone made any promises, not a part of the plea agreement, in exchange for his guilty plea, Mr. Pickron responded "no." He further testified that no one attempted to force him to plead guilty—and that he was pleading guilty because he was, in fact, guilty. *Id*. at pg. 11.

With respect to Pickron's claim that he was under "the influence of medication" during the plea hearing, the undersigned addressed such during the hearing. As mentioned, the undersigned asked Pickron about the bandage on his face, confirming that he had just received dental surgery. Pickron testified that he had taken pain medication, but stated that "it was not bothering me. I can understand." *Id*. at pg. 4-5. He further explained that he understood what was going on in his hearing and that he understood everything that had occurred in his case up to this point in the proceedings. *Id*. Once again, Pickron offers nothing in his section 2255 motion to overcome the heavy burden of his own sworn words articulated during the plea hearing. The plea transcript shows that Pickron entered his guilty plea knowingly, voluntarily, and intelligently—and his current claims are an attempt to hide behind his own sworn words. These claims should be dismissed.

### 2. Downward Departure

Next, Pickron argues that he fully cooperated with the Government and should receive a sentence reduction under Rule 35 or the sentencing guidelines. As the Government highlights, however, such claim is barred by Pickron's plea waiver because the claim does not challenge the validity of his plea. Pickron's plea agreement, which Pickron signed, contains the following provision:

> Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory minimum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

*See* 617cr074, Docket No. 54, pg. 6-7 (sealed plea agreement).

The Fifth Circuit has held that an ineffective assistance claim will survive an appeal waiver where the alleged ineffectiveness directly affects the validity of the waiver or of the plea itself. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("We also note that a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel.").

Here, Pickron argues that he should have received a sentence reduction. This claim does not affect the validity of Pickron's waiver or of the plea agreement. In fact, while Pickron insists that he received no benefit for his cooperation with the Government, Judge Clark granted Pickron a sentence variance by imposing a 74-month sentence—which was reduction of 22-months and below the recommended sentence for his cooperation. While the Probation Department recommended 96-months imprisonment, Judge Clark imposed a sentence of 74-months based on Pickron's cooperation, (Dkt. #92, pg. 26) (sealed sentencing transcript). Therefore, contrary to Pickron's claims, he received a reduced sentence because of his cooperation. This claim should be dismissed.

### 3. Failure to File Notice of Appeal

Pickron argues that Mr. Mims failed to file a notice of appeal as directed constituting ineffective assistance of counsel.

In *United States v. Tapp*, the Fifth Circuit held that the failure to file a notice of an appeal when requested is *per se* ineffective assistance of counsel even if the movant/petitioner has waived his right to a direct appeal and collateral review. 491 F.3d 263, 266 (5th Cir. 2007). If the movant/petitioner is able to demonstrate—by a preponderance of the evidence—that he requested an appeal, prejudice is then presumed, and the movant is able to file an untimely notice of appeal— regardless of whether he can identify any arguably meritorious grounds for appeal that would not

be precluded by the appeal waiver. *Id.*; *see also United States v. Higgins*, 459 F. App'x 412, 413 (5th Cir. 2012) (unpublished) ("Instead, if the petitioner demonstrates by a preponderance of the evidence that he ordered counsel to file an appeal, prejudice will be presumed, and the petitioner will be able to file an out-of-time appeal.").

The movant need only show "that there is a reasonable probability that, but for counsel's failure, he would have timely appealed." *Tapp*, 491 F.3d at 266. An evidentiary hearing is necessary when the record fails to conclusively show whether and when a movant requested counsel to file a notice of appeal. *See United States v. Hereford*, 242 F. App'x 251, 252 (5th Cir. 2007 (unpublished) ("The record in the instant case does not conclusively show whether Hereford requested that his counsel file an appeal. Therefore, in light of *Tapp*, an evidentiary hearing is necessary."); *Higgins*, 459 F. App'x at 413 (vacating and remanding for an evidentiary hearing, as "[t]he evidence does not show whether Higgins directed counsel to file a notice of appeal.").

Here, the Court has reviewed the pleadings, Mr. Mims's affidavit, the records of Pickron's criminal case, and the testimony of the evidentiary hearing. Based on the testimony at the hearing, the Court has determined that Pickron failed to show, by the preponderance of the evidence, that he requested Mr. Mims to file a notice of appeal.

The Court further determined that Mr. Mims's testimony at the *Tapp* hearing is credible. *See United States v. Giacomel*, 153 F.3d 257, 258 (5th Cir. 1998) (explaining that the Magistrate Judge may make credibility findings based on evidence presented at an evidentiary hearing in a section 2255 case). While Pickron testified that he engaged in multiple conversations with Mr. Mims during sentencing that he wanted to appeal, Mr. Mims said that, at no time, did Pickron request an appeal; additionally, Mr. Mims testified that if Pickron requested him to do so, he would have complied—but the request to file a notice of appeal in this case would have "stuck out" to

him because it would have been "nonsensical" and "malpractice" given the plea agreement, as Pickron faced a much harsher sentence. As such, because a request for a notice of appeal would have "stuck out" to him, Mr. Mims testified that he would have recalled if such a request was actually made. Mr. Mims's testimony on this point is credible.

Pickron insists that during the sentencing hearing, he told Judge Clark on the record that he wanted to appeal. He also states that he explained to Mr. Mims, during the same hearing, that he wanted to appeal. A review of the sentencing transcript does not reveal any such conversations, statements, or the like. Contrary to Pickron's current claim, which he signed under penalty of perjury, he did not tell Judge Clark that he wanted to file a direct appeal during sentencing. The Court notes that Pickron takes issue with this particular portion of the sentencing hearing:

| The Court: | If you want to file an appeal, in almost every case, you would have to give a notice of appeal within 14 days of me signing off the judgment. In other words, there is a time limit here. Do you understand that? |

| Mr. Pickron: | Yes, your honor. |

| The Court: | If you have got a question, you need to ask your attorney about that. |

(Dkt. #92, pg.28, 617cr074) (sealed sentencing transcript). During the *Tapp* hearing, Pickron characterized this exchange as him stating "yes, your Honor, I would like to appeal," and Judge Clark stating, "get with your lawyer about that."

Nothing in this exchange shows that Pickron stated to Judge Clark that he wanted to appeal or that he informed Mr. Mims that he wanted to appeal. This exchange shows nothing more than Judge Clark explaining to Pickron that if he had questions, he should ask his attorney. While Mr. Lockner on cross-examination addressed the fact that Pickron never uttered that he wanted to file an appeal during the hearing and asked whether his memory has failed him, Pickron testified that his memory has not failed him. If his memory has not failed him, then Pickron is necessarily

attempting to evade his own sworn words or is knowingly misrepresenting what occurred during his sentencing hearing.

The bottom line is that the preponderance of the evidence in this case does not show that Mr. Mims was instructed to file a notice of appeal on Pickron's behalf but then failed to do so. Under *Tapp*, the burden is on Pickron to show that Mr. Mims was ineffective for failing to file a notice of appeal. 491 F.3d at 266. He has not shown that it is more probable than not that he asked Mr. Mims to file an appeal. *See United States v. Israel*, 838 F. App'x 856, 867 (5th Cir 2020) (explaining that the "preponderance of the evidence" standard is the "more-probable-than-not" standard."). Accordingly, the Court recommends that Pickron's claim that counsel was ineffective for failing to file a notice of appeal be dismissed, with prejudice, after an evidentiary hearing pursuant to *Tapp*.

## IX. Conclusion

Pickron has not shown by the preponderance of the evidence that he asked his trial counsel, Mr. Mims, to file a notice of appeal but that counsel failed to do so. Accordingly, he cannot satisfy either of the *Strickland* prongs. Pickron is not entitled to file an out-of-time appeal. His remaining claims are without merit. Therefore, Pickron's section 2255 proceeding should be dismissed, with prejudice.

## X. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a section 2255 case "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Pickron has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a certificate of appealability because "the district

court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002).  The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (quoting *Miller-El*, 537 U.S. at 336).  Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Pickron failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason.  He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings.  Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

It is recommended that the above-styled section 2255 motion be denied, the civil action be dismissed, with prejudice, and that Pickron be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 11th day of July, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE